## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **TARAZ PARISEAU**, on behalf of herself and all others similarly situated, | Civil Case No.: |
| *Plaintiff,* | |
| v. | **COMPLAINT - CLASS ACTION** |
| **BUILT USA, LLC**, | |
| *Defendant.* | |

## INTRODUCTION

1.     This action arises out of Defendant, Built USA, LLC's ("Defendant" or "Built USA"), marketing practices that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059, as amended by Senate Bull No. 1120.[1]

2.     Built USA sends, or has sent on its behalf, telemarketing text messages advertising Built USA's sweepstakes, to individuals on the National Do-Not-Call Registry.

3.     Built USA continues to send these text messages even after it receives multiple requests from the called party requesting that Built USA STOP.

4.     These text messages fail to properly identify the source of the text

---

[1] The amendment to the FTSA became effective on July 1, 2021.

messages and do not include a telephone number to contact Built USA.

5.     Failing to provide identifying information violates the requirements of both the TCPA and FTSA that all telemarketing calls clearly identify the caller and the seller and provide contact information.  47 C.F.R. § 64.1200(d)(4); 47 U.S.C. § 227(c)(5); and Fla. Stat. § 501.059(2).

6.     Moreover, the TCPA prohibits sending telemarketing text messages to a person who, like Ms. Pariseau, has previously asked not to receive such calls, and makes sellers like Built USA liable for calls and texts made on their behalf in violation of the TCPA's internal do-not-call rules.

7.     Accordingly, Plaintiff brings this action on behalf of herself and classes of similarly situated individuals.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

9.     This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a), because it is so closely related to the federal claims that they form a single case or controversy.

10.    This Court has jurisdiction over Built USA because Built USA is headquartered in this District, conducts business transactions in this District and has committed tortious acts in this District.

2

11.     Venue is proper in this District because Built USA resides within this District and because some of the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## PARTIES

12.     Plaintiff Taraz Pariseau ("Ms. Pariseau") is, and at all times mentioned herein was, a citizen and resident of Noble, Oklahoma.

13.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

14.     Defendant is, and at all times mentioned herein was, a Florida limited liability company headquartered at 35246 US Highway 19 North, Suite 175, Palm Harbor, Florida 34684.

15.     Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

## TCPA BACKGROUND

16.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

17.     Relevant here, the TCPA establishes a national "do not call" database of numbers not to be called.  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

18.     These regulations are codified at 47 C.F.R. §§ 64.1200(c)(1-2).

19.     Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

20.     A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

21.     The TCPA also specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

22.     The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes

4

of this section." *Id.* at (c)(1)(A), (E).

23.    Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

24.    The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

25.    However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

26.    These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(7).

27.    Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d) (1, 2, 3, 6).

28.    These policies and procedures prohibit a company from making calls

for telemarketing purposes[2] unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

29.    Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

30.    There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> [S]ection 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013)

---

[2]  The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

31.     These requirements are separate but cumulative.  In other words, a company must comply with both the procedures for the company specific do-not-call list *and* the procedures for complying with the national "do not call" database regulations. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

32.     Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones that are used for residential purposes. 47 C.F.R. § 64.1200(e).

33.     Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations").  In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Netowrk, LLC et al. for Declarator Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

7

34.     Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

119.    Finally, text messages, such as the ones sent by Built USA, are subject to the TCPA and its implementing regulations. *See* Fed. Commc'ns Comm., Enforcement Advisory No. 2016-06, DA 16-1299, *Robotext Consumer Protection: Text Message Senders Must Comply With the Telephone Consumer Protection Act* (Nov. 18, 2016).

## FACTUAL ALLEGATIONS

35.     Ms. Pariseau is the user of a cellular telephone number ending in 6899.

36.     Ms. Pariseau's cellular telephone number ending in 6899 is used for residential purposes and is not associated with a business.

37.     Ms. Pariseau's telephone number ending in 6899 has been on the National Do-Not-Call Registry since May 11, 2021.

38.     On November 16, 2021 at approximately 6:46 PM, Ms. Pariseau received the following text message from Built USA:



39.    As shown above, Ms. Pariseau responded "Stop."

40.    On November 18, 2021 at approximately 5:41 PM, Ms. Pariseau received the following text message from Built USA:



41.    As shown above, Ms. Pariseau responded "Stop."

42.    On November 25, 2021 at approximately 3:06 PM, Ms. Pariseau received the following text message from Built USA:



43.    As shown above, Ms. Pariseau responded "Stop."

44.    On November 29, 2021 at approximately 12:23 PM, Ms. Pariseau received the following text message from Built USA:



45.    As shown above, Ms. Pariseau responded "Stop."

46.    Later that day, Ms. Pariseau received the following text message from Built USA:



47.    As shown above, Ms. Pariseau responded "Stop."

48.    On December 2, 2021 at approximately 11:04 AM, Ms. Pariseau

received the following text message from Built USA:



49.    Frustrated by Built USA's continued ignorance of her do-not-text requests, as shown above, Ms. Pariseau responded "Stop …."

50.    Ms. Pariseau did not provide prior express invitation or permission or consent for these text messages.  To the contrary, in response to each text message, Ms. Pariseau requested that Built USA cease texting her.

51.    The TCPA's requirement that telemarketers (a) identify themselves, (b) identify the name of the person or entity on whose behalf the calls are being made, and (c) provide a telephone number or address at which the person or entity may be contacted is material.

52.    Absent identifying information being provided in the beginning of a call or text, the called parties have no idea who is really calling them, or why.

53.    Telemarketers or "lead generators" often intentionally refuse to say who they are, and delay identifying themselves because they want to avoid accountability for their illegal marketing practices.

54.    Failure to identify oneself or those on whose behalf calls are made

during a telemarketing call or text is a substantial and material violation of the recipient's privacy rights.

55.    Built USA or those otherwise sending text messages on Built USA's behalf, did not have written do-not-call policies or procedures at the time of the calls to Plaintiff and the classes defined below.  Alternatively, whatever written policies existed either failed to comply with the minimum requirements under the TCPA, 47 C.F.R. § 64.1200(d), or were never properly implemented—including as evidenced by the continued text messages to Ms. Pariseau after she directly asked not to be contacted.

56.    Built USA's violations were negligent.  Alternatively, they were willful and knowing.

57.    Ms. Pariseau and the classes were damaged by the violations alleged herein.   Their privacy was improperly invaded, the Built USA text messages temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the unwanted text messages. The text messages were annoying and a nuisance, and wasted the time of Ms. Pariseau and the class members.  *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

## **DEFENDANT'S LIABILITY**

58.    Built USA uses automated systems to send outbound telephonic sales

calls, including text messages, to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are listed on the National Do-Not Call Registry.

59.    Built USA sent two or more telephone solicitations to Ms. Pariseau, whose number was on the National Do-Not-Call Registry at the time of the text messages. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

60.    Accordingly, for violations of 47 C.F.R. § 64.1200(c), Ms. Pariseau is entitled to an additional $500 per call through 47 U.S.C. § 227(c).

61.    Ms. Pariseau is entitled to an additional $1,500 per call if Built USA's actions are found to be knowing or willful.

62.    Built USA placed two or more telemarketing calls to Ms. Pariseau, despite not having in place the required policies and procedures prior to making such calls.   This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.6200(d).

63.    Accordingly, for violations of 47 C.F.R. § 64.1200(d), Ms. Pariseau is entitled to an additional $500 per call through 47 U.S.C. § 227(c).

64.    Ms. Pariseau is entitled to an additional $1,500 per call if Built USA's actions are found to be knowing or willful.

65.    Built USA also made or caused to be made unsolicited telephonic sales

calls to residential, mobile, and/or telephonic paging device telephone numbers, including the Plaintiff's mobile, without identifying the first or last names of the telephone solicitor, and without correctly identifying the business on whose behalf the solicitation was made, including at a minimum as part of the text messages on November 16 and 18.

66.    By doing so, Built USA violated the provisions of the Florida Telephone Solicitations Act, Fla. Sta § 501.059.

67.    Other consumers have posted complaints online[3] about receiving similar unsolicited text messages from Built USA and Built USA's refusal to cease sending them after multiple requests that they stop:



_____

[3] www.google.com (last accessed December 12, 2021).



**Built USA**
35246 US Hwy 19 N, Palm Harbor, FL

Write a review

1.7 ★★★★★ 27 reviews ⓘ

**bob sattler**
1 review

⋮

★★★★★ a year ago

This company is a scam, I have asked repeatedly to stop all the contact and they totally disregard it. Maybe if they get sued they might stop. They should change their name from builtusa to  scam artist , they are not worthy of using USA. I had to give them one star because -5 doesn't show

👍 3

**Built USA**
35246 US Hwy 19 N, Palm Harbor, FL

Write a review

1.7 ★★★★★ 27 reviews ⓘ

👍 3

**Bill Chenner**
Local Guide · 60 reviews · 43 photos

⋮

★★★★★ a year ago

I placed on order from them and they somehow seem to think that gives them permission to spam me with text messages promoting their product.
Bad unethical business practices.

👍 1



## CLASS ACTION ALLEGATIONS

68.    Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of two

categories of proposed "Classes," the "TCPA Classes" and the "Florida Class" as

defined as follows:

## THE TCPA CLASSES

Since December 14, 2017, Plaintiff and all persons within the United
States to whose telephone number Defendant Built USA placed (or had
placed on its behalf) two or more telemarketing calls in a 12-month
period when the telephone number to which the telephone calls were
made was on the National Do-Not-Call Registry for more than 30 days
at the time of the calls.

("Registry Class")

Since December 14, 2017, Plaintiff and all persons within the United
States whose telephone number Defendant Built USA placed (or had
placed on its behalf) two or more telemarketing calls or messages in a
12-month period, including at least one after the person requested that
the calls or messages stop.

16

("Policy Class")

## **FLORIDA CLASSES**

Since July 1, 2021, Plaintiff and all persons in the U.S. who (1) received a text message regarding Defendant's goods and/or services, (2) using the same equipment or type of equipment utilized to send a text message the Plaintiff.

("Autodial Class")

Since July 1, 2021, Plaintiff and all persons in the U.S. who (1) received a text message from the Defendant, (2) in which they failed to identify the name of the solicitor and the business on whose behalf the solicitation call was placed, as in the November 16 and 18 solicitations received by the Plaintiff.

("Unidentified Telephone Solicitor Class")

(The TCPA Classes and the Florida Classes are collectively referred to herein

as the "Classes.")

69.    Excluded from the Classes are Defendant and any entities in which

Defendant has a controlling interest; Defendant's agents and employees; any Judge

and Magistrate Judge to whom this action is assigned and any member of their staffs

and immediate families, and any claims for personal injury, wrongful death, and/or

emotional distress.

70.    The Members of the Classes for whose benefit this action is brought are

so numerous that joinder of all members is impracticable.

71.     The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant and third parties maintain written and electronically stored data showing:

  a.  The time period(s) during which Defendant sent its text messages;

  b.  The telephone numbers to which Defendant sent its text messages;

  c.  The telephone numbers for which Defendant had prior express written consent;

  d.  The purposes of such text messages; and

  e.  The names and addresses of Class members.

72.     The Classes are comprised of hundreds, if not thousands, of individuals.

73.     There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

  a.  Whether Defendant (or someone acting on its behalf) sends telemarketing text messages;

  b.  Whether Defendant (or someone acting on its behalf) obtains prior express written consent;

  c.  Whether Defendant or the entity with which it contracts sends solicitation text messages to telephone numbers registered on the National Do-Not-Call Registry;

18

    d.  Whether Defendant had the required policies and procedures prior to sending telemarketing text messages;

    e.  Whether Defendant's statutory violations were willful and knowing; and

    f.  Whether Defendant should be enjoined from engaging in such conduct in the future.

74.    Plaintiff is a member of the Classes in that Defendant placed two or more calls for telemarketing purposes, in a one-year period to her telephone number, without her prior express written consent, after she asked Defendant to stop, and while her telephone number was on the National Do-Not-Call Registry, including text messages sent using an autodialer and text messages that failed to identify the Defendant.

75.    Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

76.    Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendant's unwanted calls and suffered a nuisance and an invasion of their privacy.

77.    Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

78.     Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent her and the Classes.

79.     Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

80.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

81.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

82.     Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the TCPA 227(c) Class)**

83.     Plaintiff and the proposed Registry Class incorporate the allegations of paragraphs 1-82 as if fully set forth herein.

84.     Defendant sent, or had sent on its behalf, text messages constituting telephone solicitations to Plaintiff's and putative Registry Class Members' telephone numbers.

85.    Plaintiff's and putative Registry Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

86.    Plaintiff and putative Registry Class Members each received two or more such calls in a 12-month period.

87.    Plaintiff and putative Registry Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

88.    Plaintiff and putative Registry Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

## SECOND CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On behalf of Plaintiff and the Policy Class)

89.    Plaintiff and the proposed Policy Class incorporate the allegations of paragraphs 1-82 as if fully set forth herein.

90.    Defendant sent numerous text messages for telemarketing purposes to Plaintiff's and putative Policy Class Members' telephone numbers.

91.    Defendant did so despite not having a written policy pertaining to "do not call" requests.

92.    Defendant did so despite not having such a policy available "upon demand."

21

93.     Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list or policy.

94.     Defendant did so despite not recording or honoring "do not call" requests.

95.     Defendant did so without complying with the identification and disclosure requirements.  47 C.F.R. § 64.1200(d)(4).

96.     Defendant sent two or more telemarketing text messages to Plaintiff and putative Policy Class Members' telephone numbers in a 12-month period.

97.     Plaintiff and putative Policy Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5).

98.     Plaintiff and putative Policy Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5).

## THIRD CAUSE OF ACTION
### Violation of the Florida Telephone Solicitation Act, Fla. Stat. § 501.059

99.     Plaintiff and the proposed Autodial Class incorporate the allegations of paragraphs 1-82 as if fully set forth herein.

100.    Plaintiff brings this claim individually and on behalf of the Autodial Class Members against Defendant.

101.   It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

102.   A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

103.   Defendant failed to secure prior express written consent from Plaintiff and the Class Members.

104.   In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

105.   Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

106.   As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

## FOURTH CAUSE OF ACTION
### Violation of the Florida Telephone Solicitation Act,
### Fla. Stat. § 501.059

107.   Plaintiff and the proposed Unidentified Telephone Solicitor Class incorporate the allegations of paragraphs 1-82 as if fully set forth herein.

108.   The FTSA requires "any telephone solicitor who makes an unsolicited telephonic sales call to a residential, mobile, or telephonic paging device telephone number" to mandatorily "identify himself or herself by his or her true first and last names and the business on whose behalf he or she is soliciting immediately upon making contact by telephone with the person who is the object of the telephone solicitation." Fla. Stat. § 501.059(2)

109.   A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

24

110.   In violation of the FTSA, Defendant failed to identify the name of the telephone solicitor or the business on whose behalf those unsolicited telephonic sales calls were made and/or caused to be made to Plaintiff and other members of the Unidentified Telephone Solicitor Class.

111.   As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.     An order certifying the Classes as defined above, appointing Plaintiff as the representatives of the Classes and appointing their counsel as Class Counsel;

B.     An order declaring that Defendant's actions, as set out above, violate the statutes referenced herein;

C.     An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D.     An award of statutory damages;

E.     An award of treble damages; and

25

F.      Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** December 14, 2021          *s/ Avi R. Kaufman*
                                                          Avi R. Kaufman, Esquire (FL Bar No. 84382)
                                                          KAUFMAN P.A.
                                                          400 Northwest 26th Street
                                                          Miami, Florida 33127
                                                          Tel: (305) 469-5881
                                                          kaufman@kaufmanpa.com