UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TARAZ PARISEAU,

     Plaintiff,

v.                          CASE NO. 8:21-cv-2902-SDM-JSS

BUILT USA, LLC,

     Defendant.

_____/

**<u>ORDER</u>**

In this putative class action, Taraz Pariseau sues (Doc. 1) Built USA under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 277(c)(5), and the Florida Telephone Solicitation Act (FTSA), Florida Statutes § 501.059(10)(a). Arguing that 47 U.S.C. § 277(c)(5) confers no claim for relief on the recipient of a text message and that the FTSA violates the United States Constitution and the Florida Constitution, Built USA moves (Doc. 10) to dismiss each count. The complaint (Doc. 1) contains the following allegations, which are presumed true to determine whether a count states a claim.

**BACKGROUND**

Pariseau, an Oklahoma resident, owns a cellular telephone that she uses exclusively "for residential purposes." (Doc. 1 ¶¶ 12, 36) On May 11, 2021, Pariseau registered her cellphone number in the National Do-Not-Call Registry.

Built USA, a limited liability company in Palm Harbor, Florida, hosts sweep-stakes that a person can enter by paying a fee. Built USA advertises by sending a person a text message and a link to enter. Built USA delivers the text-message adver-tisement by using "an automated system for the selection or dialing of telephone numbers." (Doc. 1 at 8–11)

On November 16, 2021, Built USA sent a text-message advertisement to the phone number that Pariseau listed in the Do-Not-Call Registry. (Doc. 1 at 8–9) Pariseau never invited or consented to the text message. (Doc. 1 at 11) Pariseau quickly responded "stop" to the unsolicited text, but Built USA failed to honor the request and continued sending Pariseau unsolicited text messages advertising a Built USA sweepstakes. Although Pariseau respond "stop" to each new text message, Built USA never complied with Pariseau's request. From November 16, 2021, through December 2, 2021, Built USA sent Pariseau six unsolicited text messages. (Doc. 1 at 9–11)

In a four-count complaint (Doc. 1) asserting individual and putative class claims, Pariseau sues Built USA under the TCPA and under the FTSA. Built USA moves (Doc. 10) to dismiss the complaint under Rule 12(b)(6), Federal Rules of Civil Procedure, and Pariseau responds (Doc. 15) in opposition.

## DISCUSSION

A.    The TCPA Claims

Counts I and II claim that Built USA's unsolicited and persistent text mes-sages violate the "do-not-call" protections of the TCPA under 47 U.S.C. § 227(c)(5).

In Section 227(c), the TCPA directs the FCC to implement regulations protecting a residential telephone subscriber's "right[] to avoid receiving telephone solicitations to which they object."  To enforce these regulations, Section 227(c)(5) confers a private right of action on a person who, within any twelve-months, receives "more than one telephone call . . . by or on behalf of the same entity in violation of the regulations prescribed under [Section 227(c)]."

Pariseau alleges that each of Built USA's text messages violates two regulations "prescribed under" Section 227(c).  In Count I, Pariseau alleges that each text message violates 47 C.F.R. § 64.1200(c), which prohibits a telemarketer from "initiat[ing] any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry."  In Count II, Pariseau alleges that each text message violates 47 C.F.R. § 64.1200(d), which prohibits a telemarketer's "initiating any call for telemarketing purposes" unless the telemarketer "has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls." Under Section 64.1200(d), a telemarketer must record these internal do-not-call procedures in "a written policy, available upon demand." And, if the telemarketer "receives a request . . . not to receive calls," the telemarketer must record the request and "must honor [the request] within a reasonable time."  Because Built USA allegedly lacks a written policy "available on demand" and failed within a reasonable time to honor Pariseau's repeated requests that Built USA "stop" sending text messages, Pariseau claims that each text message violates 47 C.F.R. § 64.1200(d).

- 3 -

Moving to dismiss Counts I and II, Built USA asserts no challenge to the claim that each text message violates 47 C.F.R. § 64.1200(c) or (d).  Instead, Built USA argues that Counts I and II fail to state a claim because 47 U.S.C. § 227(c)(5) confers a claim on a recipient of at least two "telephone call[s]" — not text messages.  Because Pariseau alleges the receipt of text messages only, Built USA argues that Counts I and II warrant dismissal.

In several rules, the FCC reiterates that the TCPA affords text messages "the same consumer protections . . . as voice calls."  *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8016 (2015).  To that end, the FCC interprets "call" and "telephone call" in Section 227(b) to include both a voice call and a text message.  30 FCC Rcd. at 8020 ("[B]y . . . sending a text message to [a] consumer's wireless telephone number, . . . the [sender] thereby makes a telephone call . . . as contemplated in [S]ection 227(b)(1) of the [TCPA].").  Adopting the FCC's interpretation, *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015), concludes that 47 U.S.C. § 227(b)'s "prohibition against auto dialed calls applies to text message calls as well as voice calls."

Under *Regions Bank v. Legal Outsource PA*, 936 F.3d 1184 (11th Cir. 2019), "'[a] word or phrase is presumed to bear the same meaning throughout a text' unless context requires otherwise."  936 F.3d at 1192 (quoting *Atl. Cleaners & Dryers v. United States*, 286 U.S. 427, 433 (1932)) (alteration in original).  No context distinguishes "telephone call" in subsection (c) from "telephone call" in subsection (b).  And several persuasive decisions conclude that Section 227(c)(5) confers a claim on a person

- 4 -

receiving more than one voice call or text message.  *Truzio v. Subway Franchisee Advert. Fund Tr., Ltd.*, 2022 WL 2919260, at *3–4 (S.D. Fla. 2022) (Ruiz II, J.); *Sagar v. Kelly Auto. Grp.*, 2021 WL 5567408, at *4–5 (D. Mass. 2021) (Saris, J.); *Persichetti v. T-Mobile USA, Inc.*, 479 F. Supp. 3d 1333, 1339–40 (N.D. Ga. 2020) (Boulee, J.).

Against this authority, Built USA asserts no argument to distinguish "telephone call" in subsection (c) from "telephone call" in subsection (b).  Instead, Built USA challenges the propriety of interpreting "telephone call" in any subsection of the TCPA to include a text message.  (Doc. 10 at 7–10)  Although Built USA's interpretive argument might persuade in a case of first impression, several decisions, including *Murphy*, compel the conclusion that a text message is a telephone call under the TCPA.  And, as *Murphy* notes, a district court "lack[s] jurisdiction under the Hobbs Act to review" the FCC's interpretation of the TCPA.  797 F.3d at 1305; *Truzio*, 2022 WL 2919260, at *3–4 ("Despite an unauthorized expansion of the private right of action for violations of the TCPA's do-not-call provision, the Court must enforce the rules and regulations set forth by the FCC.").  Because "telephone call" in subsection (b) includes a text message, *Regions Bank* instructs that "telephone call" in subsection (c) includes a text message also.

To avoid this conclusion, Built USA seemingly argues that *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1168 n.2 (2021), vacates — by implication and in a footnote — any interpretation of the TCPA that defines "telephone call" to include a text message.  (Doc. 10 at 7)  This argument warrants swift rejection.  In footnote two, *Facebook* assumes, "without . . . resolving [the] issue," that the TCPA "extends to

sending text messages." Even if footnote two "notif[ies] the legal community" that the TCPA's application to a text message remains unresolved, that notice fails to negate the FCC's or *Murphy*'s conclusion that a text message equals a "telephone call" under the TCPA. Because Pariseau in Counts I and II alleges the receipt of "more than one" text message violating 47 C.F.R. § 64.1200(c) and (d), Counts I and II state a claim.

B.   The FTSA Claims

Counts III and IV assert a claim under the FTSA, which regulates a "telephonic sales call" either originating in Florida or directed to "consumers located in Florida."[1] Section 501.059(10)(a) confers a private right of action on "[a] called party who is aggrieved by a violation of [the FTSA]."

Pariseau alleges that Built USA's text messages violate two subsections of the FTSA. In Count III, Pariseau alleges that Built USA violated Section 501.059(8)(a) by sending each text message using "an automated system for the selection or dialing of telephone numbers." And in Count IV, Pariseau alleges that each text message violates Section 501.059(2) by failing to identify the first and last name of the person sending the text and by failing to identify the business on whose behalf a text was sent.

Moving to dismiss, Built USA urges that Counts III and IV warrant dismissal because the FTSA violates the United States Constitution and the Florida

---

[1] In Section 501.059(1)(J), the FTSA defines a "telephonic sales call" to include a "text message."

Constitution.[2]  Built USA argues both that the FTSA unconstitutionally restricts speech and that the phrase "automated system for the selection or dialing of telephone numbers" is unconstitutionally vague.  In response, however, Pariseau persuades that the FTSA satisfies the United States Constitution and the Florida Constitution.

   1.  *The FTSA permissibly regulates commercial speech.*

   Built USA argues that the FTSA's regulation of "telephonic sales calls" effects an impermissible restriction on speech under "the First Amendment and Florida Constitution."[3]  First, Built USA urges that the FTSA warrants strict scrutiny under the First Amendment because the statute "singles out a specific type of speech — telephonic sales calls — and subjects only these calls to specific and onerous regulation." (Doc. 10 at 15)  Because the FTSA fails strict scrutiny, Built USA continues, the statute is unconstitutional and Counts III and IV warrant dismissal.  In response (Doc. 15 at 7–9), Pariseau argues that the FTSA targets commercial speech, of which the constitution affords "only 'a limited measure of protection.'"  (Doc. 15 at 8)

_____

[2] In each constitutional challenge (Doc. 10 at 15 n.19 & 24 n.30), Built USA recognizes that the Florida Constitution affords a protection "coextensive" with the United States Constitution. Accordingly, Built USA argues that the FTSA violates the United States Constitution and "does not provide a separate analysis . . . under Florida law."

[3] Of course, the First Amendment, targeting the federal Congress, "is intended solely as a limitation on the exercise of power by the government of the United States, and is not applicable to the legislation of the states." *Barron v. City of Baltimore*, 32 U.S. 243, 250–51 (1833). But, as Built USA notes (Doc. 10 at 15) (citing *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)), the Fourteenth Amendment incorporates against the states the protections enshrined in the First Amendment. Thus, Built USA's First Amendment challenge is construed as a challenge under the Fourteenth Amendment. And under *Ramos v. Louisiana*, 140 S. Ct. 1390, 1397 n.24 (2020) (citing *Malloy v. Hogan*, 378 U.S. 1, 10–11 (1964)), decisions interpreting the First Amendment "bear the same content when asserted against" Florida under the Fourteenth Amendment.

(quoting *Fla. Bar v. Went for It, Inc.*, 515 U.S. 618, 623 (1995)).  Because the FTSA comports with this "limited measure of protection," Pariseau continues, the statute is constitutional and Counts III and IV state a claim.

Pariseau asserts the better argument.  Recognizing "'the commonsense distinction between speech proposing a commercial transaction . . . and other varieties of speech,'" the First Amendment "accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." *Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 562–63 (1980) (quoting *Ohralik v. Oh. State Bar Ass'n*, 436 U.S. 447, 455–56 (1978)).  Under *Central Hudson*, a restriction on commercial speech, "that is, expression related solely to the economic interests of the speaker and its audience," warrants intermediate scrutiny only.  Because the FTSA's regulation of "telephonic sales calls" targets commercial speech only, the statute warrants intermediate scrutiny, not strict scrutiny.

To avoid this conclusion, Built USA cites two cases — *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), and *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335 (2020) — which state that a restriction on speech is "content-based" and warrants strict scrutiny if a regulation "'on its face' draws distinctions based on the message a speaker conveys."  Because a regulation targeting commercial speech necessarily distinguishes between commercial and noncommercial speech, Built USA argues, any regulation targeting commercial speech constitutes a "content-based" restriction and warrants strict scrutiny.  In essence, Built USA urges that *Reed* and *Barr* implicitly

- 8 -

overturn *Central Hudson* and compel strict scrutiny of a regulation targeted to commercial speech.

As Pariseau notes in response, however, neither *Reed* nor *Barr* overturns *Central Hudson* or holds that a restriction on commercial speech warrants strict scrutiny. To support the rule that a regulation drawing a facial distinction based on a speaker's message is content-based and warrants strict scrutiny, *Reed* and *Barr* cite *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 563–65 (2011). *Sorrell* analyzes a Vermont law prohibiting a pharmacy's selling a physician's information to a drug manufacturer for marketing to the physician. Because the law disfavors specific "recipient speakers" — drug manufacturers — and disfavors specific intended speech — marketing, *Sorrell* holds that the law is content-based and that "heightened judicial scrutiny is warranted." 564 U.S. 564–66. *Sorrell* never concludes that this content-based restriction on commercial speech warrants strict scrutiny. Instead, *Sorrell* conducts a "commercial speech inquiry" and analyzes the law under intermediate scrutiny. 564 U.S. at 571–72. Thus, *Sorrell* explicitly retains *Central Hudson*'s distinction between a restriction on commercial speech and a restriction on noncommercial speech.

Neither *Reed* nor *Barr* alters *Sorrell*'s recognition that a content-based restriction targeting commercial speech warrants intermediate scrutiny. Although *Reed*, 576 U.S. at 163, and *Barr*, 140 S. Ct. at 2346, state that "[c]ontent-based laws . . . are presumptively unconstitutional" and that each warrants strict scrutiny, the conclusion in each decision follows because each decision analyzes a restriction on noncommercial speech protected "at the First Amendment's core." *Went For It, Inc.*, 515 U.S. at 624.

First, *Reed*, 576 U.S. at 159, analyzes a municipal code regulating "the manner in which people may display outdoor signs." The code distinguishes among ideological signs "communicating a message or ideas for noncommercial purposes," political signs "designed to influence the outcome of an election," and temporary signs directing people to an event sponsored by a church or similar nonprofit organization and imposes different restrictions based on a particular sign's categorization. 576 U.S. at 159–61. The code treats ideological signs most favorably, political signs less favorably, and temporary directional signs least favorably. In *Reed*, a community church using a sign to direct people to Sunday services challenged the regulation of temporary directional signs. Noting that the code's restrictions "depend entirely on the . . . content of the sign," *Reed* concludes that the code imposes a "content based" restriction on speech and warrants strict scrutiny. 576 U.S. at 164.

As *Flanigan's Enterprises, Inc. of Georgia v. City of Sandy Springs*, 703 Fed. Appx. 929, 935–36 (11th Cir. 2017), persuasively notes, *Reed* analyzes a code regulating three categories of noncommercial speech that warrant the strongest First Amendment protections. *Reed* "did not address" any exception, such as the commercial speech exception, to the rule that "[c]ontent-based restrictions on speech normally trigger strict scrutiny." *Wollschlaeger v. Governor*, 848 F.3d 1293, 1308 (11th Cir. 2017). Rather than impliedly abrogating a long-standing doctrine, *Reed* conforms to the uncontroversial rule that strict scrutiny constitutes the "heightened judicial scrutiny" normally applicable to a content-based restriction of noncommercial speech.

- 10 -

And *Barr* reiterates the uncontroversial rule that a content-based restriction on noncommercial speech normally warrants strict scrutiny.  In *Barr*, 140 S. Ct. at 2344–45, the plurality applies strict scrutiny to the TCPA's exempting from liability a person who uses an auto-dialer or prerecorded voice in a call "to collect a debt owed to or guaranteed by the United States."  Noting that the exception "on its face" draws a distinction based on the content of a call and favors certain commercial speech over political and other speech, *Barr* determines that the exception warrants strict scrutiny.  140 S. Ct. at 2346–47.  After concluding that the exception fails strict scrutiny, *Barr* invalidates the exception and subjects any auto-dialed or prerecorded call to the same restrictions.  140 S. Ct. at 2355.

Built USA primarily relies on *Barr* to argue that a content-based regulation of speech, including a regulation targeting commercial speech, warrants strict scrutiny. Because *Barr* applies strict scrutiny to a regulation affecting commercial speech, Built USA argues, *Barr* requires strict scrutiny of a regulation targeting commercial speech. (Doc. 10 at 15–16)  But rather than target commercial speech for restriction, the exception in *Barr* protects certain commercial speech more strongly than noncommercial speech.

Indeed, the debate between *Barr*'s plurality and dissent results from a disagreement about whether the challenged exception "regulates" commercial speech or noncommercial speech.  Noting that the exception "regulat[es] debt collection," the dissent argues that the exception warrants intermediate scrutiny under *Central Hudson*. 140 S. Ct. at 2359 (Breyer, J. dissenting).  But the plurality notes that "the First

- 11 -

Amendment complaint at the heart of th[is] suit [is] unequal treatment." 140 S. Ct. at 2355 (responding to Justice Gorsuch's concurrence).  In other words, the plurality analyzes the exception from the perspective of the plaintiffs — political consultants conducting political speech.  According to the plurality, the exception warrants strict scrutiny because the exception "favors speech made for collecting government debt over political and other speech," effectively restricting the "political and other speech." 140 S. Ct. at 2347.  Thus, *Barr* applies strict scrutiny to "unequal treatment" that restricts political speech, not to a restriction on commercial speech.  The FTSA restricts commercial speech only; *Barr* is inapposite.[4]

And *Barr* clarifies that the "decision is not intended to expand existing First Amendment doctrine or to otherwise affect traditional or ordinary economic regulation of commercial activity." 140 S. Ct. at 2347.  As *Barr* notes, "Before overruling precedent, the Court usually requires that a party ask for overruling, or at least obtains briefing on the overruling question, and then the Court carefully evaluates the traditional *stare decisis* factors." 140 S. Ct. at 2347 n.5.  Because neither *Reed* nor *Barr* overturns *Central Hudson*, the FTSA's regulation of commercial speech warrants intermediate scrutiny.  *Recht v. Morrisey*, 32 F. 4th 398, 409–10 (4th Cir. 2022) ("*Barr*

---

[4] Similarly, Built USA identifies two decisions, *Cahaly v. Larosa*, 796 F.3d 399 (4th Cir. 2015) and *Gresham v. Rutledge*, 198 F. Supp. 3d 965 (E.D. Ark. 2016), that invalidate laws "very similar" to the FTSA. But Built USA's description of the purportedly analogous state laws confirms that *Cahaly* and *Gresham* are inapt.  Both the South Carolina law reviewed by *Cahaly* and the Arkansas law reviewed by *Gresham* regulate consumer telephone calls and, materially, political calls. Thus, *Cahaly* and *Gresham* correctly apply strict scrutiny to a restriction on political speech. Neither decision informs an assessment of the FTSA, which regulates commercial speech only.

- 12 -

explicitly warned that it was not seeking to upset the First Amendment apple cart . . . . Commercial speech regulations are analyzed under *Central Hudson*.").

As Pariseau demonstrates in response (Doc. 15 at 10–14), the FTSA "directly advances" Florida's interest in protecting "residential privacy and tranquility" and "leaves open alternative channels for communication." Thus, the FTSA satisfies intermediate scrutiny and Built USA's challenge fails. *Truzio*, 2022 WL 2919260, at *10–11.

    2. *The FTSA is not unconstitutionally vague.*

Finally, Built USA argues that Count III warrants dismissal because the FTSA's failure to define "an automated system for the selection or dialing of telephone numbers" renders the statute unconstitutionally vague. (Doc. 10 at 23–29) In response, Pariseau demonstrates that the FTSA overcomes a challenge based on vagueness.

To survive a vagueness challenge under *United States v. Single Family Residence & Real Property*, 803 F.2d 625, 630 (11th Cir. 1986), a statute must "'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited.'" Although the occasional subject of judicial interpretation, the phrase "automated system for the selection or dialing of telephone numbers" reasonably establishes the conduct prohibited under the FTSA.[5] *Turizo*, 2022 WL 2919260, at *11–12.

---

[5] Built USA fails either to assert a proposed interpretation of the phrase "automated system for the selection or dialing of telephone numbers" or to assert an argument that Built USA's conduct falls outside the statute. This order forbears a speculative interpretation.

- 13 -

Trying to establish the FTSA's unconstitutional vagueness, Built USA argues that the FTSA "leaves no measure by which" a regulated party could interpret "automated system for the selection or dialing of telephone numbers." To support this argument, Built USA claims, among other claims, that a sufficiently broad interpretation of the phrase might include a cellphone. (Doc. 10 at 28) But Built USA's claims better support an argument for a specific interpretation of the section — not an argument that the section so completely evades interpretation as to render the FTSA unconstitutional. Because the phrase "automated system for the selection or dialing of telephone numbers" "conveys [a] sufficiently definite warning as to" the regulated methods of transmitting a sales call, the vagueness challenge fails. *Hogan v. Atkins*, 411 F.2d 576, 578 (5th Cir. 1969).

## CONCLUSION

For these reasons and for other reasons asserted in Pariseau's response (Doc. 15), Built USA fails to successfully challenge any claim in the complaint. Accordingly, the motion (Doc. 10) to dismiss is **DENIED**.

ORDERED in Tampa, Florida, on August 5, 2022.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

- 14 -